AMERICAN POTASH AND CHEMICAL CORPORATION *v*. NEVINS

No. 43000 April 20, 1964 163 So. 2d 224

*Richard B. Booth,* Aberdeen; *Thomas J. Tubb,* West Point, for appellant.

*Ralph E. Pogue,* Aberdeen, for appellee.

McElroy, J.

This case involves an appeal from a judgment of $2,000 entered on a jury verdict for appellee, plaintiff in the lower court, by the Circuit Court of Monroe County, Mississippi, where appellee filed suit to recover damages to a growing crop of cotton by chemicals escaping from appellant's plant during its operation.

Appellee charged in the original declaration that during the spring and summer months of 1959 he was growing cotton at Hamilton, Monroe County, Mississippi; that appellant, defendant below, at that time owned, operated, and controlled a chemical plant located approximately one-half mile in a southwesterly direction from the community known as New Hamilton, Monroe County, Mississippi, being situated east of the Tombigbee River and west of U. S. Highway 45; that appellee had a crop of cotton located approximately one-quarter of a mile in a southeasterly direction from appellant's plant; that appellant collected, handled, produced, stored and manufactured poisonous and dangerous chemicals on his premises, and the handling, production, storage and manufacturing of these poisonous chemicals were under his direction and control; that appellant negli-

gently handled, produced, manufactured and allowed to escape from its premises, or caused to escape from its premises, dangerous and poisonous chemicals which damaged seventeen acres of appellee's cotton, causing the cotton to fail to produce; that as a result of this negligence appellee lost seventeen bales of cotton valued at $175 per bale, or $2,975; that appellant was under a duty to exercise ordinary and the highest degree of care to prevent damage to appellee's property, and that appellant breached its duty in not exercising the required degree of care to prevent gaseous poison and gas fumes and chemicals from escaping from its plant and contaminating the appellee's growing cotton; that by the exercise of the required degree of care appellant would or should have known that its chemicals would do damage to appellee's cotton; and that appellant breached the duty owned appellee, and as a direct proximate consequence appellee was injured and damaged.

The amended declaration charged appellant with continuously and negligently emitting dangerous and poisonous gases and chemicals from its plant; charged appellant with the duty to inspect and cause inspections to be made to determine if its operations were causing damage to appellee and others; charged appellant knew or should have known the dangerous propensities of its chemicals and gases; charged it was under a duty to warn appellee of its dangerous operations; and charged that appellant damaged appellee's property and the property of others in the vicinity, thereby committing a trespass upon appellee's property.

Appellant denied it owed appellee any of the duties charged as breached in the declaration or was negligent or under duty to exercise the highest degree of care. It admitted it operated a chemical plant at Hamilton, Mississippi and loosed into the atmosphere chlorene gas and sodium chlorate dust in small quantities, but denied the amounts were sufficient to damage man or

plant. It denied it owed plaintiff the duty to inspect or warn him or that the chlorene gas and sodium chlorate emitted polluted the air. It denied further that appellee's cotton was damaged as a result of its operation, or that it knew or should have known that sodium chlorate and chlorene gas would kill cotton if it got on it in sufficient quantities.

The facts of this lawsuit are simple. Appellee, a life-long, experienced farmer was growing cotton in Monroe County, Mississippi during 1959 on a farm he rented on fourths. One-quarter to one-half mile to the northwest appellant was operating a chemical plant, which had operated and produced sodium chlorate since the last month of 1958. This operation requires the use of sodium chloride with electricity, and by several processes it is reduced to a liquid and then transformed into a solid, sodium chlorate.

During manufacture a by-product, chlorene gas, is produced, and is purposely emitted into the atmosphere. The sodium chlorate is produced in cell vats. In this plant there were fourteen vats, each giving off chlorene gas, sodium chlorate, and sodium chloride, any one of which, or a combination of any two, would kill or damage cotton if a sufficient amount got to it. There were also sodium chloride and sodium chlorate escaping from the hammer mill and loading chute in unknown quantities, and there was no way to determine how much was escaping from these sources. Appellant contends that it was escaping in small amounts, yet it admitted it was escaping to the extent that it had become an economic factor; and it says it can determine accurately the amount escaping with tests, but admits the amount escaping can vary from nineteen to one hundred fifty pounds of a particular chemical per day.

The appellant knew these chemicals were escaping, and that they were used as cotton defoliators and weed killers. It knew the appellee was growing cotton in

close proximity to the plant, yet failed to inspect or warn him of its operations.

During the summer of 1959 appellee and others in close proximity to appellant's plant noticed damage to their cotton and called Mr. Cason Randall, the county agent, to inspect their cotton. Mr. Randall inspected the cotton and later inspected it with Dr. Rupert D. Palmer, Mr. Adams (manager of appellant's plant), Mr. Nevins (appellee), and Mr. Hollowell. No other damage in the county of that nature was reported to Mr. Randall.

Dr. Rupert D. Palmer, an expert in chemicals and plants from Mississippi State University, testified that he visited appellee's cotton field, from his experience and observation the cotton was damaged by chemicals, and in view of the pattern of damage, in his opinion the chemicals came from appellant's plant. He stated the obvious thing was the leaves on plants of cotton, corn, johnson grass, sweetgum trees, and other plants had circular dysecated areas in the leaf surface which he recognized as toxic chemical.

Appellant used as witnesses Dr. C. H. Arndt, botanist and plant pathologist, and Dr. J. B. Sinclair, plant pathologist. Dr. Arndt, outstanding in his field and with long years of experience, research and study, came to appellant's plant in September, 1959 and made an exhaustive investigation of all kinds of plants growing in the area around appellant's plant. He went into appellee's cotton field, took leaves of cotton, examined the stalks, the grounds and state of cultivation, rainfall for the season, and gave as his expert opinion that the gases and chemicals emitted from appellant's plant did no damage to appellee's cotton. He said the damage was caused by poor stand of cotton, small stalks, soil dry and hard and not properly cultivated, and leaf damage by recognized pathogenes and spider mites.

Dr. Sinclair, employed by Louisiana State University and the Louisiana State Experiment Station, inspected

appellant's plant and surrounding area in 1961 and 1962, and did some research and experiments with sodium chlorate, sodium chloride and chlorine gas on growing cotton. He determined it would take a concentration of 50,321 parts per million of sodium chlorate to defoliate cotton. It was his opinion also that appellee's cotton field was deficient in potash, which would produce the symptoms and trouble described by appellee.

Appellant contends the court erred in permitting appellee to examine witness George Adams as an adverse witness over objection. Mr. Adams was manager of appellant's plant, but not an officer or director of the corporation. Upon this showing, the court sustained appellant's objection to appellee calling and treating Mr. Adams as an adverse witness. But, during examination of Mr. Adams by appellee, he again renewed his demand that the witness was adverse, and the court allowed the witness to be examined as an adverse witness. The witness at no time demonstrated he had any monetary interest in the outcome of the suit or he had any hostility to appellee. At times, appellee's attorney made accusations by question that the witness had a right to resent. The court never ruled Adams was adverse or hostile until appellee had concluded his examination, and at that time the court stated, "We allowed you to cross examine this witness. I think the witness is an adverse witness." In short, the court held at the beginning that Adams was not adverse, and it was the duty of the court to allow leading questions unless objected to, and there were no objections. It was within the discretion of the court to determine whether Adams was adverse. The witness had been manager of the plant since it opened, and knew all the facts about it. He knew the officers and directors were out of the state, and, as stated by this Court in Winter v. Nash Finance Co., 245 Miss. 246, 147 So. 2d 507, "While Code Sec. 1710 expressly authorizes the cross-

examination of an opposite party in open court, that section does not attempt to limit the inherent power of the court in regard to the manner in which witnesses may be examined in its search for the truth.'' We hold this is not error.

■■ ■ Appellant contends it was error to permit appellee, over appellant's objection, to give evidence to prove the damage was done by chemicals or herbicides to trees, grass and vegetation generally in all areas in and around appellant's plant to as far as one-half mile away. The record does not show, but objection was made to appellee's question to Mr. Adams about damage to areas around the plant, and the court let the testimony be developed in the absence of the jury. Upon return of the jury, Mr. Adams was asked if he had made inspections and investigations that would extend 2,000 feet to 6,000 feet in the general area of the plant. It was elicited from the witness that vegetation and trees in the immediate vicinity of the plant showed signs of damage, and about cotton and corn patches north, northwest as well as south, southwest and southeast. Appellee's cotton, the subject of this suit, lay south and southeast of appellant's plant.

The testimony of George Adams, Dr. Rupert D. Palmer, J. S. Therrell, Delmar Holloway and appellee go to establish damage to grass and trees, as well as cotton, in all areas around appellant's plant, and for varying distances up to one-half mile from the plant. It has been held proper to admit evidence of chemical damage to the same crop (cotton here) in areas around the plant for the one purpose of establishing the chemical did damage to the one crop in question. Therrell, a forester, never was in the area of the plant until July 1961, two years after appellee charges his cotton was damaged.

We hold the assignment is without foundation, since one of the issues in this case is whether or not chemicals·

were escaping from appellant's plant in sufficient quantity to damage plant life. It will be noted that in appellee's amended declaration the appellee alleged the chemicals were escaping and his property and others' were damaged by the escaping gases and chemicals.

The appellant answered and denied the amount of escaping gas and chemicals was of sufficient quantity to damage man or plants. Therefore, one of the issues in the case is whether or not sufficient quantities of chemicals were escaping to damage plant life. Evidence is admissible to show a collateral fact if the fact tends to prove or disprove a matter of fact made an issue in the case. The appellant admitted the three chemicals were freely escaping from its plant. It was proved that any one of these chemicals would kill or damage plant life, yet appellant contends its chemicals were not escaping in sufficient quantities to damage plant life. It is the contention of appellee that anything which tends to prove that fact in issue was relevant and properly admitted.

We are of the opinion the court committed no error in allowing this evidence. The evidence was restricted to within one-half of a mile from appellant's plant which was the greatest estimate of the appellee's crop at the furtherest point from appellant's plant. Appellee's witness, Dr. Rupert D. Palmer, an expert from Mississippi State College, testified the damage on appellee's cotton was the same as that on corn, johnson grass, sweetgum trees and other plants which he recognized as toxic chemical. Dr. Palmer further testified there was a pattern of damage in all directions of the plant, and the closer one came to the plant, the greater the damage.

In Jolley v. United Power & Light Corp., 131 Kan. 102, 289 P. 962, the defendant denied that gas had been escaping from its lines. Witnesses for the plaintiff offered evidence that trees, grass, shrubbery, etc. had been dying in the vicinity for several weeks because of

gas leakage, and the court held that this evidence was admissible. The instant case differs from that case only in that appellant admits the chemicals were escaping, but denies they were doing so in sufficient quantities to damage plant life.

Appellant contends the court erred in admitting guess estimates or guess evidence by appellee of his cotton loss by non-production in 1959 and the evidence offered by appellee to establish his damage, over objection.

Appellee was his only witness to testify or offer evidence as to the damage he suffered. He testified he noticed "something burning with white smoke rising" and "over that property the chemical did have a very strong odor at times . . . wherever it settled it seemed there was quite a bit of damage down there." He said in the latter part of July he saw spots on the leaves that "was" out of order, that would die just like an acid had possibly been dropped on them, and the plant would quit growing, but did not shed all the leaves, but just quit growing for a period of about two weeks, before it put on any more growth, but he had no knowledge of what caused the damage. The field next to the highway, or the first field as you go out of the plant, was damaged more than the ones further from the plant. To the west the damage was lighter until it ran out. He had a field of about 21 acres at an angle that was damaged in a zigzag direction across, and he measured the amount of cotton produced in different fields that were damaged to within a fourth of a bale, and that cotton on the east side of his place produced about one and one-half bales per acre, and as he came across the field, it was damaged to approximately one-half bale per acre. He lost seventeen bales of cotton in 1959. He gave testimony of the average weight per bale raised in 1959, and that he put in the loan, the average loan price and loan value per bale average, the cost of picking the cotton per bale, and his net

profit per bale was one hundred fifty-two dollars. The above in summary is all of the evidence that appellee offered on the loss or value of the loss to his cotton crop.

Appellant contends appellee did not prove his cotton was damaged by chemicals from appellant's plant, and that appellee did not sufficiently prove the amount of damages, that the damage was speculative and the amount is speculative.

This is a case in tort, and the amount of damage is for the jury to determine.

 ██ The proof showed that appellant's plant was freely emitting three chemicals, any of which would damage or kill appellee's cotton; that the chemicals were escaping from three sources, these sources being known, and from two sources in unknown quantities (the hammer mill and loading chute); that the amount escaping from the hammer mill and loading chute could not be determined; that there was a pattern of damage with the greatest damage being nearest the plant; that the chemical could be seen above the plant and it went in the direction of the wind; that appellant's plant was the only plant in that area; that no damage like that had been seen before; that the same damage was present on other plant life in that vicinity; that in the opinion of Dr. Rupert D. Palmer, an expert from Mississippi State University, it was chemical damage and came from appellant's plant; and that the cotton leaves were healthy other than in this area which was damaged by chemicals.

In Wichers v. New Orleans Acid & Fertilizer Co., 55 So. 657, a Louisiana case in which the facts are very similar to those here, the court held that:

"A plaintiff sustains a burden of proof when he shows that at the time his plants were destroyed and damage suffered, the defendant's factory was freely emitting fumes, gases, and acids, which are destructive of plant

life, and that the wind was blowing the fumes, etc., towards his premises, some 900 feet distant, and that there was no other known agency of destruction existing in the vicinity." This holding was reaffirmed in Orton v. Virginia Carolina Chem. Co., 77 So. 632.

In this case we have a pattern of damage, fumes being smelled a mile and a half away, proof that any one of appellant's chemicals would damage cotton, proof that chemicals were escaping in unknown amounts, and testimony by an expert that appellee's cotton was damaged by chemicals from appellant's plant.

This Court held in Broadhead v. Gatlin, 243 Miss. 386, 137 So. 2d 909, that the evidence was sufficient to make a case for the jury when the plaintiff testified that the refuse from the defendant's slush pit drained into his pond, killing the fish, and that the pond overflowed and the cows drank the water and died within approximately three weeks, and that caustic soda was a potential killer of fish.

In Consumers Veneer Co. v. Chestnut, 210 Miss. 430, 49 So. 2d 734, it was held that the amount and value of the timber was for the jury to determine. In that case the defendant admitted that he cut timber belonging to the plaintiff.

This Court discussed in detail damages and the proof thereof in the case of Baker v. Mississippi State Hwy. Comm., 204 Miss. 166, 37 So. 2d 169. It cited many cases and various rules involved in proving damages. The Court stated:

"In these exceptional cases all that can be done is to apply thereto a rule supported by reason, logic and common sense, designed to result, as far as may be humanly possible, in the ascertainment of the true, accurate damage the property owner has suffered.

" . . .

"In unusual cases, where the circumstances are such that neither of the foregoing rules is applicable to the

peculiar facts, the trial court will adopt such rules as in reason and fairness to the parties is best designed to enable the jury to arrive at the true, accurate amount of damages.''

The appellee may have, to a certain degree, been in doubt or confused in offering his evidence on the measure of damages for the impairment of growing crops by the emission of chemicals and the value of the cotton, at the same time may have gone further in his proof. We believe that the evidence is sufficient to go to the jury as to the liability and the measure of damages, as well as the value of the growing crops.

■■ ■ The measure of damages for impairment of growing crops by the emission of poisonous fumes and chemicals is well illustrated in the case of International Agricultural Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A. 415, which held:

''The questions raised on this appeal, as to these rulings on the evidence, may be classified as follows: The court allowed witnesses who had qualified as expert witnesses on farming and agriculture, as to the particular land in question, to testify as to what amount of crops the defendant would have produced on the land but for the alleged fumes; the amount actually produced on the land in question with the fumes present, the value of the respective crops produced during the season in question, and the amount produced on land similar to that in question, during the same season, under like mode of cultivation, and with the same kind of fertilizers. . . . In fact, the mode followed by the trial court would be the only mode which would be practicable to ascertain or to prove the amount of the damages (if any there were) in consequence of the fumes complained of. There was not an entire destruction of the crops at one time, as by overflow or by depredation of stock; but the injury was almost continuous, or was at least recurring whenever the factory was in operation and the fumes

were being emitted, and the chief damages claimed were in the diminished yield on account of the fumes. For this reason the rule is different from that governing in cases where there is a complete destruction of the crops by livestock or by floods. . . .

"The measure of damages was, of course, the difference in the yield and the price of the crops with, and without, the presence of the fumes complained of; and the evidence complained of was admissible for the purpose of showing these necessary elements which entered into the amount of damages suffered, if any there were. The evidence as to the amount produced and as to the price was not offered as showing the measure of damages, but as furnishing a basis from which to ascertain their amount."

In Stigall v. Sharkey County, 213 Miss. 798, 57 So. 2d 146, suggestion of error 213 Miss. 798, 58 So. 2d 5, at p. 6, where the question of continuous damages is concerned, it is stated:

"It is well settled that the proper method to be used in proving the damages in this case is to show the value of the crop at the time of destruction. 25 C.J.S., Damages, § 85b, p. 610, says: 'The measure of damages for the destruction of, or injury to, a crop is its value at the time and place of destruction.' The rule for which appellee contends applies only to a permanent injury to real property. 25 C.J.S., Damages, § 84, p. 603."

It is stated in 3 Sutherland on Damages, 3d ed., § 704, "Certainly a tort feasor should not be permitted to escape liability because the court may find difficulty in declaring a perfect measure for the damages which have been suffered by reason of the tort."

 █ In Bigbee Fertilizer Co. v. Scott, 3 Ala. App. 333, 56 So. 834, the Alabama court was called upon to decide the exact problem which is presented in this case. Adelaide Scott had sued the Bigbee Fertilizer Company for letting fluorine gas escape to her property

and continuously damage her orchard, garden, crops, etc. She was permitted to prove what other crops in the neighborhood, not affected by the fumes from Bigbee's plant, yielded. There the court held:

"To illustrate, suppose appellee had permitted the appellate to run a pipe upon her land from its mill to the Alabama river, for the purpose of piping its fluorine gas into the river, instead of permitting it to escape into the atmosphere; suppose the land through which this pipe ran had been planted in cabbages, and the appellant had so negligently operated its pipe as to permit the gas to escape and destroy or damage the yield of the cabbages for a distance of fifty feet on each side of the pipe — could it be successfully contended that the law would not permit a jury, in fixing appellee's damages, to take into consideration the yield of the balance of the field, and in this way arrive at an estimate of what the land would have produced but for the effects of the fluorine gas?"

15 Am. Jur., Damages, § 23 states that when the fact of damage is shown with reasonable certainty, the extent of the damages may be left to the reasonable inferences of the jury.

In Laurel Equip. Co. v. Matthews, 218 Miss. 718, 67 So. 2d 258, the evidence was in hopeless conflict. This Court stated that under such circumstances the determination of the issue was for the jury, and under all the facts the verdict of the jury could not be said to be against the overwhelming weight of the evidence. The suit was filed by Mr. and Mrs. O. W. Matthews against Laurel Equipment Company to recover damages on account of the alleged negligent distribution of paint onto their adjacent premises. They charged their vegetables, flowers, shrubbery, etc. were ruined, and that the distasteful and obnoxious odors made them sick and prevented them from enjoying the peaceful occupancy and habitation of their premises. The answer denied all

material allegations, and its evidence showed that it was not emitting enough gases or odors to be harmful. However, as the Court properly held, where the evidence was in direct conflict, the issue was for the jury to determine.

This Court held in Cochran v. Consumers' Wirebound Box Co., 246 Miss. 398, 149 So. 2d 845, that the fact one neighbor testified she was not bothered by any substance from the incinerator of the defendant was of no importance. She testified she had not been on the plaintiff's street and did not know where he lived. The facts were very similar to those here, and the plaintiff sought to recover damages to property caused by waste from defendant's incinerator.

We are of the opinion from the evidence that the case was properly submitted to the jury as to liability, damages, and the value of growing crops.

Affirmed.

*Kyle, P. J., and Ethridge, Gillespie and Rodgers, JJ.,* concur.