564 So.2d 1382 (1990)
E.F. SHUTES and Sally Shutes
v.
PLATTE CHEMICAL COMPANY.
No. 89-CA-149.
Supreme Court of Mississippi.
July 25, 1990.
*1383 Willard L. McIlwain, Greenville, for appellants.
Philip Mansour, Jr., Mansour & Mansour, Greenville, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
BLASS, Justice, for the Court:
Plaintiffs, E.F. Shutes and his wife Sally Shutes, brought suit against the defendant, Platte Chemical Company, in the Circuit Court of Washington County. The defendant operated a chemical plant on property immediately adjacent to the property which the plaintiffs owned and upon which they resided. Plaintiffs charged that the defendant negligently emitted chemicals from its plant which caused serious damage to plant life located on the property of the plaintiffs. Plaintiffs also contended that they were entitled to recover for mental pain and suffering and for the depreciation in the value of their property resulting from such chemical emissions. An amendment to the complaint charged the defendant guilty of trespass, by allowing chemicals from the defendant's plant to come upon plaintiffs' property, and further charged that the plant constituted a nuisance. An additional amendment was filed charging that the defendant was strictly liable for allowing ultra-hazardous substances to escape from its property and come upon that of the plaintiff.
At the close of the plaintiffs' case, the court denied a motion for directed verdict, but granted the motion at the close of the defendant's case. The plaintiffs appeal, presenting two questions: (1) whether the trial court erred in directing a verdict for the defendant, and (2) whether the trial court erred in refusing to admit evidence pertaining to punitive damages.
In reviewing a directed verdict granted at the close of all of the evidence, we must consider all of the evidence together with all favorable inferences reasonably *1384 to be drawn from the evidence, in the light most favorable to the party against whom the verdict was rendered. Mississippi Farm Bureau Mutual Ins. Co. v. Todd, 492 So.2d 919, 927 (Miss. 1986). Here, examining the evidence, we find that the plaintiffs have lived on the property where they now reside for about thirty-seven years. The land is located immediately north of the defendant's chemical plant. Prior to 1985 or 1986, the plaintiffs' yard and garden bore healthy vegetation and plant life. Now, and for the last several years, much of the vegetation has died or is dying. One of the plaintiffs, Mr. Shutes, testified that he could smell the plant and that frequently it made his eyes water and caused his nose to run. The evidence established that the plant produces linuron, paraquat, diuron and other chemicals. The chemicals above named are herbicides and kill plant life.
The plant manager, an adverse witness, testified that he noticed damage to the vegetation north of the plant in the spring of 1986. He testified that 8/1000 of a pound of chemicals per hour go into the air and that this amount is below the standards permitted by the Mississippi Air Pollution Control Authorities. The tests also showed that 56/1000 of a pound per hour of particulate emission, containing about .017 pounds of actual linuron was being emitted into the air by the plant. He also received the report that linuron and diuron were found on the plaintiffs' property. The manager stated that to his knowledge no other plant in the area produced these chemicals. There was substantial evidence, including photographs and the testimony of other residents of the area, that the vegetation was being destroyed in the area to the north and adjacent to the plant. Plaintiffs' expert testified as to the presence of the linuron in the soil from the property in question. Additionally, he testified that based on his examination of the soil and his observation of the foilage, in his opinion the damage was caused by linuron. The record discloses no other release of these chemicals than that from the defendant's plant. Counsel for the defendant argued in support of a motion for directed verdict at the close of the plaintiffs' case
... that this record contains absolutely no causal connection between the operation of the Platte Chemical Company and the damages suffered by the plaintiffs. The only evidence is that they have linuron damage. There is no evidence of where it came from. The fact that this plant alone produced linuron, I submit is not sufficient to take it to the jury. They have got to be able to connect them.
We disagree, and believe that crumbs on the floor around the dining room table may be reasonably supposed to have fallen from the table.
The motion was renewed at the close of all the evidence and, finally, granted by the court. In reporting his decision to the jury, the judge said,
In my judgment, the evidence offered by the plaintiff while tending to suggest some liability on the part of the defendant, was not sufficient as a matter of law to hold the defendant liable. There is no question but that something peculiar is going on in that area, but I believe it remains an unsolved mystery, and, for that reason, a judgment will be entered by the court on behalf of the defendant.
Again, we disagree with the learned judge and are of the opinion that the evidence submitted and the reasonable inferences which can be drawn therefrom are such that a reasonable juror could have found for the plaintiffs. Winstead v. Berry, 556 So.2d 321, 323 (Miss. 1989); Hammond v. Grissom, 470 So.2d 1049, 1053 (Miss. 1985); Gee v. Hawkins, 402 So.2d 825, 827-28 (Miss. 1981); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 655-57 (Miss. 1975).
With respect to the denial of submission of the question of punitive damages, the court was obviously of the opinion that the testimony of the witnesses Neely and Mullens would have supported an award of punitive damages if the chemical damage, obviously suffered by the plaintiffs, could be established as coming from the defendant's plant.
*1385 The witnesses Mullens and Neely testified that chemicals were dumped into the ditch behind the plant and that there were large spills of chemicals on the railroad track immediately adjoining the plaintiffs' property and that these spills were washed into the ditch which ran along the railroad track adjacent to the plaintiffs' property. They testified that the spills occurred in the plant almost daily and that the spills occurred on the track every time there was a shipment received. While this was denied by other witnesses, it nevertheless presented an issue of fact and would, if believed, have strongly supported the submission of the issue of punitive damages to the jury.
The record does not disclose precisely what chemicals were involved in these spills, but photographs show that the grass was dead along the edges of the ditch and the testimony indicated that the goats who drank from the ditch died. The judge observed that it might be inferred that the chemicals would have included linuron and diuron.
We are of the opinion that there was sufficient evidence adduced in this case from which a jury could have reached a reasonable conclusion as to whether or not the property of the plaintiffs was indeed invaded by chemicals having their origin at the plant of the defendant. A similar situation was presented in American Potash and Chemical Corp. v. Nevins, 249 Miss. 450, 163 So.2d 224 (1964) as to the physical facts. As to the sufficiency of the evidence to require submission to a jury, see City of Jackson v. Filtrol Corp., 624 F.2d 1384 (5th Cir.1980); Laurel Equipment Co. v. Matthews, 218 Miss. 718, 67 So.2d 258 (1953).
In the light of the foregoing, the case is reversed and remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and PITTMAN, JJ., concur.