## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 91-CA-00380-SCT

*LEAF RIVER FOREST PRODUCTS, INC., GREAT NORTHERN NEKOOSA CORPORATION AND DONALD R. HUBBARD*

*v.*

*WESLEY M. SIMMONS*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/16/90 |
| TRIAL JUDGE: | HON. DARWIN M. MAPLES |
| COURT FROM WHICH APPEALED: | GREEN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | LEE DAVIS THAMES |
| | W. WAYNE DRINKWATER |
| | RICHARD A. MESERVE |
| ATTORNEYS FOR APPELLEE: | JOHN M. DEAKLE |
| | PATRICK W. PENDLEY |
| | LAWRENCE E. ABERNATHY |
| | CURTIS R. HUSSEY |
| NATURE OF THE CASE: | CIVIL - TORTS (OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE) |
| DISPOSITION: | REVERSED AND RENDERED - 12/12/96 |
| MOTION FOR REHEARING FILED: | 1/8/97 |
| MANDATE ISSUED: | 8/14/97 |

### EN BANC.

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

### I. INTRODUCTION

¶1. Great Northern Nakoosa Corporation, Leaf River Forest Products, Inc., and Donald R. Hubbard appeal from an adverse judgment in the Circuit Court of Greene County in the amount of $20,000 for nuisance and trespass, $20,700 for the loss of value to property, and $1,000,000 in punitive damages. This case involves the riparian rights of Wesley Simmons, a land owner downstream from a mill

which diverts a large quantity of water from the Leaf River for use in its production process before returning it to the river. Simmons maintained that the Leaf River mill discharged harmful substances into the Leaf River, thereby causing him personal injury and property damage. Simmons' claim was based on negligence, assault and battery, nuisance, trespass and intentional infliction of emotional distress. Because the trial court erroneously granted a peremptory instruction in Simmons's favor on the issue of liability, we much reverse. In addition, based on deficiencies in the proof offered by Simmons, we must render judgment in favor of defendants.

## II. STATEMENT OF THE FACTS

¶2. Leaf River Forest Products ("LRFP"), a wholly-owned subsidiary of Great Northern Nakoosa Corporation, operated a mill on the Leaf River in New Augusta, Perry County, about forty miles upstream from property owned by Wesley Simmons. The mill processed timber into a pulp product which involved a bleaching stage, in which the pulp, a tan or light brown color, was made white with the use of chlorine or chlorine dioxide. The mill was allowed by state permit to pump twenty-five million gallons of water per day from the Leaf River for use in the bleaching stage. After completion of the bleaching process, the chemicals and water utilized were put into sewers which emptied into the waste treatment area so that the chemicals could be extracted and the water released in its original condition to continue its journey downriver.

¶3. The environmental manager at LRFP first learned of the correlation between dioxin and the pulp and paper industry in the fall of 1985. In 1987, the EPA conducted a five mill study confirming the link between dioxin and paper and pulp mills. In 1987-88, it had become apparent that chlorine use was a major factor in dioxin formation, and steps were taken to replace as much chlorine as possible. The mill began to use chlorine dioxide in 1988-89 when it learned that it was producing and releasing dioxin into the water.

¶4. Wesley Simmons, a retired commercial fisherman, owned property on the Leaf River approximately forty miles downstream from the mill. He intended this land to be a place for retirement and family gatherings. After LRFP began its operations, Simmons allegedly noticed the water getting darker, gobs of foam appearing on the surface, and the fishing conditions degenerating. He also noticed a strong smell, and blisters or lesions on the mouths and heads of the fish he caught. Fishing advisories warning against the consumption of fish caught in the river were eventually posted by the DEQ in November of 1989, and subsequently in the spring and fall of 1990, based on dioxin levels detected in the fish. The mill denied being responsible for the fishing advisories, but was admitted that it could be a source of dioxin in the river. The mill denied it was the only source or that it was responsible for the health hazard.

¶5. Simmons asserted that he feared for his and his family's safety because they had eaten fish from the river. He refused to be tested for elevated levels of dioxin in his body because, he asserted, he would feel blameworthy for his family's similar condition if the tests should prove positive. Simmons estimated that he had served around two hundred pounds of fish from the river to his family and friends. Mrs. Hilda Long, a resident along the Pascagoula River, noticed many of the same conditions and expressed many of the same fears regarding the condition of her property located approximately an hour and fifteen minutes downriver from Simmons. A real estate agent estimated the damage to Simmons' property to be approximately $27,775.00.

¶6. Simmons introduced experts who maintained that dioxin had a detrimental effect on most of the body's systems, including the central nervous system. Dioxin was also thought to be involved with cancers of the liver, and exposure to the toxin often caused a skin rash called chloracne. There was also a latency period of a number of years between exposure to dioxin and the manifestation of its effects. The EPA classified dioxin as a probable carcinogen in humans, and it was known to be a deadly poison. Simmons' expert witnesses agreed that it was reasonable to assume that dioxin was present on his property and in the river surrounding his property. They likewise testified that it was reasonable for Simmons to fear becoming ill from dioxin exposure even though his property was not tested for its presence.

¶7. LRFP's experts testified that other sources such as municipal solid-waste incinerators were the main source of dioxin. LRFP maintained that it operated with the best technology available, and that it had never discovered through any testing that the river's condition ever exceeded a life threatening range. Fish with sores were found above the plant as well as below since the condition was often caused by the increase in water temperature during summer. It denied that any of its activities would have a reasonable likelihood of adversely affecting human health or the environment. LRFP attributed the color of the river to iron oxide which leached from the soil in various places along the river rather than as the result of the mill's effluent. The mill maintained that any water color change caused by it would not have any toxic qualities anyway. It agreed that fish consumption was the main source of contact with dioxin on the river, but its own fish tests revealed dioxin levels which were not life threatening to the fish or humans since there was a consensus among scientists that a threshold level of dioxin existed where no harm would result. LRFP's experts testified that there was no reasonable scientific certainty for concluding that Simmons had a risk of cancer or disease or a reasonable fear of being inflicted with illness as a result of the dioxin levels on the river.

### III. LAW

¶8. This Court's holding in the present case is dictated largely by this Court's decision in *Leaf River Forest Products, Inc. v. Ferguson*, 662 So.2d 648 (Miss. 1995), in which case this Court reversed a jury verdict in favor of the plaintiff Ferguson and rendered judgment in favor of defendants. *Ferguson* involved two of the exact same defendants being sued for the alleged release of dioxin into the very same Leaf River by a plaintiff similarly situated to the plaintiff in the present case. On the facts of *Ferguson*, this Court concluded that no reasonable juror could have found in favor of Ferguson, and this Court concludes that a similar result should be reached with regard to Simmons' cause of action in the present case.

¶9. The facts of the present case are very similar to those in *Ferguson*, most significantly as they relate to the deficiencies in the proof offered by the plaintiffs. The differences between the present case and *Ferguson* are largely procedural, given that, in *Ferguson*, Leaf River appealed from a jury verdict which held Leaf River liable for, among other things, nuisance, but not for trespass. In the present case, by contrast, the trial judge granted a directed verdict in favor of Simmons with regard to "trespass and nuisance" and the case was submitted to the jury solely with regard to damages.

¶10. Despite these differences, the cases are essentially identical with regard to the failure of the plaintiffs to establish either a nuisance or trespass cause of action, given that Simmons and Ferguson both failed to have their property or themselves tested for the presence of dioxin. Leaf River

proffered testimony that it had tested Simmon's property for dioxin and found no detectable levels of this chemical, but the trial judge excluded this expert testimony on motion of the Plaintiff based on the grounds that said tests had been performed after the discovery deadline.

¶11. Leaf River contends that the trial judge's exclusion of said evidence constituted an abuse of discretion, but this Court need not address this issue, given that, as clearly indicated by this Court's ruling in *Ferguson*, Simmons' proof was inadequate to support a jury verdict in his favor for nuisance. *Ferguson*, 662 So.2d at 665. To support the trial court's granting of a peremptory instruction in his favor, Simmons cites proof of water discoloration in the Leaf River, the posting of signs warning of the danger of fish consumption, a bad smell emanating from the river, foam on the water, the presence of fish with lesions in the river, as well as evidence that fishing in the area was getting worse.

¶12. This proof offered by Simmons closely parallels that offered by the plaintiff in *Ferguson*. Simmons, like Ferguson, presented no evidence of dioxin tests conducted on his property or on his person, and this Court in *Ferguson* held the proof absent such evidence to be insufficient to support a recovery under either a public or private nuisance theory. *Id.* at 665. This Court in *Ferguson* clearly set forth the rationale for rendering judgment for Leaf River with regard to the nuisance cause of action, stating that:

> Because we find that the evidence is insufficient to support recovery under either public or private nuisance, we do not reach the question of whether certain evidence was wrongfully excluded by the circuit court.

¶13. With regard to the trespass cause of action, the deficiency in Simmons' proof is even clearer than with regard to the nuisance action, given that trespass requires an actual physical invasion of the plaintiff's property. *Blue v. Charles F. Hayes & Associates, Inc.*, 215 So.2d 426 (Miss. 1968). This Court did not have the opportunity to address the issue of trespass in *Ferguson*, given that the jury in said case had held the defendants to not be liable for trespass. It is clear, however, this Court's reluctance to allow recovery for nuisance absent a showing that dioxin was present on Ferguson's property applies even more to a trespass cause of action than to a nuisance cause of action which requires no actual physical invasion.

¶14. Simmons would have this Court infer a trespass on Simmons' land based upon the release of dioxin forty miles upstream. However, Simmons offered no scientific proof or analysis to establish the presence of dioxin on his land, and the trial judge did not permit Leaf River to introduce tests showing no detectable levels of dioxin on Simmons' property. This Court held in *Masonite Corp. v. Hill*, 170 Miss. 158, 168, 154 So. 295, 298 (Miss. 1934) that the plaintiff had the burden of proving the presence of a harmful substance on the property in question and that said proof is an "essential step" without which the verdict could not stand. In *Masonite Corp. v. Dennis*, 175 Miss. 855, 168 So. 613 (Miss. 1936), this Court reversed a jury verdict in favor of a plaintiff based on the plaintiff's failure to establish the necessary elements of causation. This Court reversed and rendered in each of these cases, and there are no compelling reasons why a differing result should be reached in the present case.

¶15. There is no evidence offered by Simmons that dioxin is present on his property, and, without such evidence, a trespass verdict can not stand under the facts of the present case. Considering the

evidence in the light most favorable to Simmons and with all favorable, reasonable inferences given to him, the facts are overwhelmingly in favor of Leaf River, and this Court concludes that reasonable jurors could not have arrived at a nuisance or trespass verdict in favor of Simmons and that the directed verdict in favor of Simmons should be reversed and that judgment should be rendered in favor of defendants. This Court deems it unnecessary to consider other issues, such as the punitive damages issue, in light of the aforementioned holding.

¶16. **REVERSED AND RENDERED.**

**LEE, C.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. SULLIVAN, P.J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶17. I must dissent to the majority's mandate.

¶18. The proper standard of review for a directed verdict is found in *Munford, Inc. v Fleming*, 597 So.2d 1282, 1284 (Miss. 1992):

> . . .[T]his court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.

¶19. After consideration of all the evidence in the light most favorable to Simmons, this Court cannot say that the evidence is so overwhelmingly in favor of Leaf River that reasonable jurors could not have arrived at a nuisance or trespass verdict in favor of Simmons. Further, the evidence is not such that Leaf River deserves a directed verdict on the issues of trespass and nuisance.

¶20. Although there is no direct evidence of the existence of dioxin on Simmons' property, there is circumstantial evidence about which reasonable men could differ as to whether there had actually been an invasion of Simmons' property forty miles downstream. It was established that the condition of the river beyond Simmons' property had been similarly affected. However, without an actual detection of dioxin on Simmons' property, it follows that a directed verdict on trespass in Simmons' favor was improper. Only where there is no doubt of an invasion can a peremptory instruction on trespass be proper. Therefore, since a fact question existed as to the issue of trespass, the trial court erred in failing to allow this question to be presented to the jury.

¶21. Alternatively, there was at least a fact issue presented on nuisance. The majority forgets that a paramount question for the appellants in this case--whether the elements constituting a nuisance are

present--is one for the jury to consider. *See, e.g.*, **Shutes v. Platte Chem. Co.**, 564 So.2d 1382 (Miss. 1990); **Magnolia Petroleum Co. v. Stinson**, 230 Miss. 533, 93 So.2d 815 (1957); **Southland Co. v. Aaron**, 221 Miss. 59, 72 So.2d 161 (1954).

¶22. Again, even though Simmons failed to have his property tested for presence of dioxin, it is undisputed that the mill discharged dioxin into the river with its effluent. Only the effect of the amounts discharged was disputed by the various experts. Simmons argued that the nuisance cause of action was based not only on the presence of dioxin, but also on the discoloration of the river and the various warnings posted. On the other hand, Leaf River argued that the river was healthy, that other sources of dioxin necessitated the fishing advisories, and that none of the discoloration problems could be traced to the mill's discharge.

¶23. Whether the nature of the nuisance was public or private, there was sufficient conflicting evidence to have presented a jury question. The trial court should have at least allowed the question of nuisance to go to the jury.

¶24. The trial court committed reversible error in failing to submit the trespass and nuisance issues to the jury. Further, the majority has repeated the trial court's error by inappropriately rendering judgment in favor of Leaf River. It is for these reasons that I dissent. I would reverse and remand this case for a new trial on all issues.