**GREAT NORTHERN NEKOOSA CORPORATION, Leaf River Corporation, Leaf River Forest Products, Inc., and Warren Richardson, Plaintiffs,**

v.

**AETNA CASUALTY AND SURETY COMPANY, California Union Insurance Company, Federal Insurance Company, Home Insurance Company, Insurance Company of North America, International Insurance Company, National Union Fire Insurance Company of Pittsburg, Pa., and New England Insurance Company, Defendants.**

Civil Action No. 1:92CV017–S–D.

United States District Court,
N.D. Mississippi,
Eastern Division.

April 8, 1996.

---

James E. Price, Jr., Corinth, MS, John H. Gross, Finley Harckham, New York City, for Plaintiffs.

F. Ewin Henson, III, Greenwood, MS, Thomas J. Groark, Jr., Hartford, CT, for Defendant Aetna.

L.F. Sams, Jr., Tupelo, MS, Stuart H. Newberger, Washington, DC, for Defendant California Union.

Walker W. Jones, III, Jackson, MS, for Defendant Federal Insurance.

Dermont S. McGlinchey, New Orleans, LA, for Defendant Home Insurance.

L.F. Sams, Jr., New Orleans, LA, for Defendant Insurance Company of North America.

Mark Douglas Herbert, Jackson, MS, Lawrence M. McHeffey, Morristown, NJ, for Defendant International Ins.

William M. Beasley, Tupelo, MS, for Defendant National Union Fire.

Robert K. Upchurch, Tupelo, MS, for Defendant New England Ins.

## MEMORANDUM OPINION

SENTER, Chief Judge.

This declaratory judgment is before the court on cross-motions for summary judgment as to the obligation of Aetna Casualty & Surety Company (hereinafter referred to as "Aetna") to defend the plaintiffs (hereinafter collectively referred to as "GNN") in a multitude of civil cases which have been filed in state court. The issue the court must address is whether the personal injury endorsement in the Aetna policies provides coverage for the claims of trespass, nuisance, and emotional distress which have been alleged in the underlying state lawsuits.

### Facts

The pending state court actions have been filed by over 2,000 individuals who own or use land along the Leaf and Pascagoula Rivers. The first of such lawsuits was brought in 1989. All of the cases are related to the operation of the Leaf River Forest Products' pulp mill in New Augusta, Mississippi. The mill processes timber into market pulp which is used to produce high-quality paper products. As part of daily operation, the pulp mill discharged pollutants, including dioxin, into the Leaf River which joins the Chickasawhay River to form the Pascagoula River. The typical underlying complaint makes claims for trespass, nuisance, and claims for emotional distress due to the fear of developing cancer.

Aetna sold GNN two primary comprehensive general liability insurance policies covering from January 1, 1984, through April 1, 1986. These two policies cover the subsidiaries of Great Northern Nekoosa. The coverage under the policies included the obligation to pay the defense costs of any action covered under the bodily injury, property damage, or personal injury provisions. Aetna defended the plaintiffs during *Simmons v. Leaf River Forest Products, Inc.,* Civil Action No. 4566 (Cir. Ct., Greene County), but a

judgment was entered against Leaf River. After further investigation, and during the pendency of *Ferguson v. Leaf River Forest Products,* Civil Action No. 91D–20 (Cir. Ct., Jackson County), Aetna notified the plaintiffs that the insurance policy did not provide coverage for the alleged incidents in state court, and that Aetna had no duty to defend nor an obligation to indemnify the plaintiffs. Aetna had agreed to defend the plaintiffs under a reservation of rights.

In the insurance policy for bodily injury and property damage coverage, Aetna agreed to:

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> bodily injury or property damage
>
> to which this insurance applies, caused by an occurrence, and ... [Aetna] shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage....

The insurance policy contains a pollution exclusion which provides:

> This insurance does not apply:
>
> \*   \*   \*   \*   \*   \*
>
> (f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental....

Personal injury coverage which is provided in the Broad Form Comprehensive General Liability Endorsement is coverage separate and distinct from the bodily injury and property damage coverage. Section II of the personal injury coverage provides:

> [Aetna] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury ... to which this insurance applies, sustained by any person or organi-

zation and arising out of the conduct of the named insured's business ... and ... [Aetna] shall have the right and duty to defend any suit against the insured seeking damages on account of such injury....

"Personal injury" is defined as:

injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) **wrongful entry or eviction or other invasion of the right of private occupancy;**

(3) a publication or utterance

(a) of a libel or slander or other defamatory or disparaging material, or

(b) in violation of an individual's right to privacy....

This definition was expanded by an endorsement amendment to include:

4. **Fright, Mental Anguish,** Plagiarism

5. **Creation of Emotion Disturbance**

6. Discrimination....

### Ferguson v. Leaf River Forest Products Inc.

In *Leaf River Forest Products v. Ferguson,* 662 So.2d 648 (Miss.1995), Leaf River Forest Products (LRFP), a subsidiary of Great Northern Nekoosa and the operator of the Leaf River Paper Mill, was sued for the discharge of dioxin into the Leaf River which allegedly damaged the plaintiffs' property and caused them emotional distress. The Jackson County Circuit Court entered a judgment for Thomas and Bonnie Jane Ferguson against LRFP. The Mississippi Supreme Court reversed and rendered the judgment because it found there was insufficient evidence to support the verdicts based either on infliction of emotional distress or nuisance. Aetna had initially defended Great Northern Nekoosa in the case filed by the Fergusons, but concluded after some investigation that the insurance policy did not provide coverage for the allegations of the complaint. This withdrawal of defense is what prompted Great Northern Nekoosa to file the declaratory judgment action *sub judice.*

Both Great Northern Nekoosa and Aetna allege that *Ferguson* supports their position in this declaratory judgment action. The jury did not find trespass, but did return a verdict for the Fergusons in the amount of $10,000.00 each for nuisance; $90,000.00 each for emotional distress; and $3,000,000.00 in punitive damages. The Mississippi Supreme Court went into great detail reciting the facts and evidence presented at the circuit court trial, and concluded that the evidence was insufficient to support the jury's verdicts. Regarding the emotional distress verdict, the *Ferguson* court stated:

In this case, there is a lack of evidence proving exposure of the appellees to a dangerous or harmful agent and the record is devoid of any medical evidence pointing to possible distress predicated on potential or probable future illness. Certainly, if one is to recover for emotional distress predicated on potential future illness, there must be substantial proof of exposure and medical evidence that would indicate possible future illness.

*Id.* 662 So.2d at 658. After reviewing the elements of both private and public nuisance, the court concluded that the evidence presented was insufficient to constitute a significant interference with the Fergusons' use and enjoyment of their property, and that they had failed to articulate an individualized injury different from that suffered by the public in general. The *Ferguson* decision certainly affirms that with sufficient proof of injury, the release of dioxin into a stream will support a claim for nuisance, emotional distress, and presumably trespass. The decision does little to assist the court in determining whether the policies obligate Aetna to defend and indemnify GNN.

### Contract Construction

The interpretation of an insurance policy is a question of law for the court when the meaning of the terms is clear and unambiguous. *See Aero Int'l, Inc. v. United States Fire Ins. Co.,* 713 F.2d 1106, 1109 (5th Cir.1983); *Reece v. State Farm Fire & Cas. Co.,* 684 F.Supp. 140, 143 (N.D.Miss.1987). "Where terms of insurance contracts are ambiguous or doubtful, the contract must be

construed most favorably to insured and against insurer. Terms of insurance policies are construed favorably to insured wherever reasonably possible, particularly exclusion clauses." *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So.2d 1371, 1372 (Miss.1981).

It is equally well settled law that "the special rules favoring the insured are only applicable when there is an ambiguity ... [and that] courts ought not to strain to find such ambiguities, if, in so doing, they defeat probable intentions of the parties ... even when the result is an apparently harsh consequence to the insured." Courts will neither create an ambiguity where none exists nor make a new contract for the parties. If the policy language is clear, unequivocal, and, hence unambiguous, its terms will be enforced.

*Brander v. Nabors*, 443 F.Supp. 764, 769 (N.D.Miss.1978) (internal citations omitted). "A supplemental rule of construction is that when the provisions of an insurance policy are subject to two interpretations equally reasonable, that interpretation which gives greater indemnity to the insured will prevail." *Caldwell v. Hartford Accident & Indemnity Co.*, 248 Miss. 767, 160 So.2d 209 (1960).

■ The construction of an insurance contract is limited to an examination of the "written terms" of the policy itself. *Employers Mut. Casualty Co. v. Nosser*, 250 Miss. 542, 553, 164 So.2d 426, 430 (1964). The policy itself is the sole manifestation of the parties' intent, and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole. *Cherry v. Anthony, Gibbs, Sage*, 501 So.2d 416, 419 (Miss.1987). If an insurance contract is clear and unambiguous, the language therein must be given its plain meaning. *Gulf Nat'l Bank v. United States Fire Ins. Co.*, 713 F.2d 1106, 1109 (5th Cir.1983); *see also Putman v. Insurance Co. of North America*, 673 F.Supp. 171, 175 (N.D.Miss. 1987) ("Mississippi law requires that the words of the contract be given their ordinary meaning.") (*citing Mississippi Power and Light v. United Gas Pipe Line*, 760 F.2d 618 (5th Cir.1985)). The court must construe the policy in a manner that effectuates the parties' intentions. *See Western Line Consol. School Dist. v. Continental Cas. Co.*, 632 F.Supp. 295, 302 (N.D.Miss.1986) (*citing Monarch Ins. Co. v. Cook*, 336 So.2d 738, 741 (Miss.1976)).

### Duty to Defend

■ "The duty of the insurer to defend is determined by the allegations of the complaint." *Putman v. Insurance Co. of North America*, 673 F.Supp. 171, 176 (N.D.Miss. 1987) (*citing Southern Farm Bureau Casualty Insurance Co. v. Logan*, 238 Miss. 580, 119 So.2d 268, 271 (1960)); *see also State Farm Mutual Automobile Ins. Co. v. Taylor*, 233 So.2d 805, 808 (Miss.1970).[1] "Only if the pleadings state facts 'bringing the injury within the coverage of the policy' must the insurer defend." *Foreman v. Continental Casualty Co.*, 770 F.2d 487, 489 (5th Cir. 1985) (*citing Battisti v. Continental Cas. Co.*, 406 F.2d 1318, 1321 (5th Cir.1969)). "It is the nature of the claim that is to be considered and not its merits in determining whether a duty to defend is created." *Put-*

---

1. Aetna argues that the allegation of the complaint rule does not apply in this case since *Simmons* and *Ferguson* have judicially established the facts of this case. This declaratory judgment action includes a great many more cases than *Simmons* and *Ferguson*. Not only is GNN attempting to recover the cost it incurred in defending since Aetna's withdrawal of representation, but also, GNN is seeking an adjudication of Aetna's obligation of indemnification and resumption of defense. The jury in *Ferguson* did not return a verdict regarding the trespass claim, and the verdicts finding nuisance and emotional distress were overturned for lack of evidence. Ultimate success does not preclude the obligation to have defended the insured. Considering the court's holding, Aetna's decision to withdraw defense was wrong. But since the court has found only select allegations to fall within the coverage of the insurance policy, Aetna may not have an obligation to provide the entire defense costs. Aetna has requested that the court prorate the costs of defense for the covered and noncovered claims. *See EEOC v. Southern Pub. Co., Inc.*, 894 F.2d 785, 791 (5th Cir.1990) (*quoting Insurance Company of North America v. Forty–Eight Insulations, Inc.*, 633 F.2d 1212, 1224 (6th Cir.1980)). At this juncture, the court has not been sufficiently informed as to any costs, much less whether there is a reasonable means to separate the costs.

*man,* 673 F.Supp. at 176 (*citing* 14 *Couch on Insurance 2d* § 51:48 (1982)). "[T]he duty to defend is broader than the insurer's duty to indemnify under its policy of insurance: the insurer has a duty to defend when there is any basis for potential liability under the policy." *Merchants Co. v. American Motorists Ins. Co.,* 794 F.Supp. 611, 617 (S.D.Miss. 1992) (*citing CNA Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 222 Cal.Rptr. 276 (1986), and *Liberty Life Ins. Co. v. Commercial Union Ins. Co.,* 857 F.2d 945, 949 (4th Cir.1988)). This cause is not before the court to try the state court cases, but to determine whether the insurance policy provides coverage for the plaintiffs.

> The right of the insurer to exclusive control over litigation against its insured is accompanied by a correlative requirement that the insurer defend the insured against all actions brought against him on the allegation of facts and circumstances covered by the policy, even though such suits may be groundless, false or fraudulent. The traditional test is that the obligation of a liability insurer is to be determined by the allegations of the complaint or declaration. Moreover, a divergence may exist between the facts as alleged in the petition and the actual facts as they are known to or reasonably ascertainable by the insurer, in which latter case the insurer has a duty to defend, notwithstanding a policy exclusion. . . .

*State Farm Mutual Automobile Ins. Co. v. Taylor,* 233 So.2d 805, 808 (Miss.1970) (internal citations omitted).

### Discussion

The issue before the court is centered around whether the personal injury endorsement to the general liability policy provides coverage for the allegations made in the underlying state court lawsuits. Aetna argues that the personal injury endorsement cannot

be used to circumvent the expressed pollution exclusion which is applicable to both bodily injury and property damage. Aetna asserts that there is no distinction between the property damage sustained due to the plaintiffs' discharge of dioxin and the alleged personal injuries for which the plaintiffs are seeking coverage. The plaintiffs argue that the state lawsuits allege trespass and nuisance, which comport with a basic reading of "wrongful entry or eviction or other invasion of the right of private occupancy." Additionally, GNN argues that the underlying lawsuits allege emotional distress from the fear of contracting cancer. Aetna argues that there is no coverage for the alleged emotional distress since the discharge of dioxin did not become public knowledge until several years after the Aetna policies had expired. GNN counters that the emotional disturbance was created during the Aetna polices when the dioxin was released.

The holding of this court follows a simple logical progression:

> The policy's pollution exclusion is only applicable to bodily injury and property damage. It is not applicable to liabilities enumerated within the personal injury endorsement. The underlying state court plaintiffs have alleged personal injuries which fall within the personal injury endorsement. Additionally, the policies clearly provide coverage for "fright, mental anguish ... [and] creation of emotional disturbance" which has been alleged to have occurred during the policy period. The Aetna policies purchased by GNN provide coverage for those personal injury allegations.

Unfortunately, a great many cases have addressed the same coverage issue and either due to factual nuances or different legal methods have concluded that similar insurance policies do not provide coverage for pollution related injuries.[2] There are cases

---

**2.** Those courts which have found "other invasion of the right of private occupancy" to not expand the policy coverage to situations of pollution spills or migrations have so concluded for various reasons. First, there are the cases which concluded that the pollution exclusion is applicable to the expanded coverage of the personal injury endorsement. Generally, the logic of

these courts is to give full effect to the intent of the parties by barring any claims associated with pollution injuries. *See Harrow Products, Inc. v. Liberty Mut. Ins. Co.,* 64 F.3d 1015 (6th Cir. 1995); *Pipefitters Welfare Educ. Fund v. Westchester Fire,* 976 F.2d 1037, 1042 (7th Cir.1992). Second, there are those cases which have used the doctrine of *ejusdem generis* to interpret the

which have found the personal injury provision to provide coverage for damage caused by pollution.[3] This court's holding generally follows the premise of these decisions.

### Distinction Between Property Damage and Personal Injury

■ In *Titan Holdings Syndicate v. City of Keene*, 898 F.2d 265 (1st Cir.1990), the First Circuit concluded that the pollution exclusion did not bar claims brought under the personal injury endorsement which were distinct from bodily injury and property damage. The underlying complaints claimed that the City of Keene was running a sewage treatment plant which gave off noxious fumes and produced excessive light and noise. The state court plaintiffs "claim[ed] this ha[d] injured them in various ways: causing mental distress and worries about health effects, making them nauseous, subjecting them to public ridicule, and interfering with the quiet enjoyment and use of their home." *Titan Holdings*, 898 F.2d at 271. With regards to the application of the pollution exclusion to these claims the First Circuit stated:

> First of all, the exclusion language does not support the district court's understanding of an exclusion for all "pollution related activities." The clauses expressly exclude only bodily and property damage liability "arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." To read the clauses as excluding all claims for damages from all "pollution related activity" stretches the exception beyond its express language, and provides less coverage than agreed to.

*Id.* 898 F.2d at 268. This paragraph accentuates the difference between those courts which have found coverage for pollution re-

---

phrase "wrongful entry, or eviction, or other invasion of the right of private occupancy" to require the dispossessing of the property interests. *See Staefa Control–Sys. v. St. Paul Fire & Marine Ins. Co.*, 847 F.Supp. 1460, 1474 (N.D.Cal.1994) (policy provided coverage only for interference with the right to possess property, not the mere physical invasion of that property); *W.H. Breshears, Inc. v. Federated Mut. Ins. Co.*, 832 F.Supp. 288, 291 (E.D.Cal.1993) (third-party suit against insured alleging trespass, nuisance and strict liability not covered by personal injury provision which requires a claim by one person over another to occupancy of property); *Decorative Ctr. of Houston v. Employers Casualty Co.*, 833 S.W.2d 257, 261–62 (Tex.Ct.App.1992) (offenses "are meant to cover only landlord-tenant situations, or, if extended, only similar instances where defendant insured has some superior right to occupancy to that of the plaintiff"); *Morton Thiokol, Inc. v. General Accident Ins. Co. of America*, No. C–3956–85 (Sup.Ct.N.J. Aug. 27, 1987) (wrongful entry, eviction and occupancy have to do with possession of property; seepage of toxic waste does not affect possession of property, so personal injury clause does not cover nuisance and trespass claims). Third, there are those cases which have determined that the complaint does not allege any personal injury claims, but only claims for property damage, and thus no matter what the argument, the personal injury endorsement is not invoked. *See Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203 (5th Cir. 1991); *Northbrook Indem. v. Water Dist. Management Co.*, 892 F.Supp. 170 (S.D.Tex.1995); *County of Columbia v. Continental Ins. Co.*, 83 N.Y.2d 618, 612 N.Y.S.2d 345, 634 N.E.2d 946 (1994) ("[I]t would be illogical to conclude that the claims fail because of the pollution exclusion while also concluding that the insurer wrote a personal injury endorsement to cover the same eventuality."); *Titan Corp. v. Aetna Casualty & Sur. Co.*, 22 Cal.App.4th 457, 27 Cal.Rptr.2d 476, 486 (1994) (personal injury provision "limit[s] coverage to injuries personal to the occupant, as distinct from the damage to the realty").

**3.** *See Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265 (1st Cir.1990); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037 (7th Cir.1992); *Scottish Guarantee Ins. Co., Ltd. v. Dwyer*, 19 F.3d 307 (7th Cir.1994) ("wrongful entry" includes unintentional trespass); *Hirschberg v. Lumbermens Mutual Casualty*, 798 F.Supp. 600 (N.D.Cal.1992) ("invasion of the right of private occupancy" provides coverage for "interference with possession and enjoyment ..."); *Gould, Inc. v. Arkwright Mt. Ins. Co.*, 829 F.Supp. 722, 729 (M.D.Pa.1993) (ambiguity in personal injury endorsement interpreted in favor of insured); *Blackhawk–Central City Sanitation Dist. v. American Guarantee and Liab. Ins. Co.*, 856 F.Supp. 584, 590 (D.Colo.1994) (claims of trespass and public and private nuisance by downstream property owners fall within personal injury endorsement; "wrongful entry and eviction" do not require dispossession); *Harvard Indus. v. Aetna Casualty & Sur. Co.*, 273 N.J.Super. 467, 642 A.2d 438, 444 (1993) (trespass or unauthorized entry satisfies definition of personal injury); *City of Edgerton v. General Cas. Co.*, 172 Wis.2d 518, 493 N.W.2d 768, 780–81 (App.1992) (pollution damage to property can constitute invasion of private use and enjoyment); *Martin Marietta Corp. v. Insurance Comp. of North America*, 40 Cal.App.4th 1113, 47 Cal.Rptr.2d 670 (1995) ("The conclusion that 'wrongful entry' encompasses trespass and may encompass nuisance seems to us to be a straightforward one.").

lated personal injuries and those courts which have concluded that any injury caused by pollution is excluded by the pollution exclusion. The *Titan Holdings* court found the pollution exclusion to not have application to the personal injury coverage since the exclusion only has effect on bodily injury and property damage.

Relying on a New Hampshire Supreme Court decision, the First Circuit found that "an invasion of the right of private occupancy need not involve 'an appreciable and tangible interference with the physical property itself.'" *Titan Holdings*, 898 F.2d at 272 (*quoting Town of Goshen v. Grange Mutual Ins. Co.*, 120 N.H. 915, 917, 424 A.2d 822, 824 (1980)). The court concluded that the allegations came within the policy coverage and that the insurer potentially would be responsible to defend. Based upon the case of *Town of Epping v. St. Paul Fire & Marine Ins.*, 122 N.H. 248, 444 A.2d 496 (1982), which allowed extraneous evidence to show the parties' intent, the appellate court remanded the case to allow the insurer to establish whether the insured had had the option of purchasing separate insurance for the alleged incident.

*Blackhawk–Central City Sanitation District v. American Guarantee and Liability Ins. Co.*, 856 F.Supp. 584, 590 (D.Col.1994), considered claims of nuisance and trespass, based on pollution emanating from a waste treatment facility, and held that there was a duty to defend. The court found that the pollution exclusion, which is similar to the clause before this court, in several of the policies applied only to bodily injury and property damage coverages and not to the personal injury coverage. The court found the wrongful entry was "substantially analogous" to trespass, that a person of ordinary intelligence would have understood the personal injury coverage to include trespass and nuisance claims, and that at the very least, "wrongful entry" was ambiguous and must be construed in favor of coverage.

In *Pipefitters Welfare Educ. Fund v. Westchester Fire*, 976 F.2d 1037 (7th Cir. 1992), the Seventh Circuit addressed the same personal injury endorsement *sub judice* within the context of allegations of pollution damage. Pipefitters had failed to inform Arst, to whom it had sold an electrical transformer, that the transformer contained 80 gallons of oil laden with polychlorinated biphenyls (PCBs). When Arst cut the transformer for scrap, PCBs contaminated the site, requiring Arst to incur clean-up and down-time expense. Pipefitters brought a declaratory action to determine whether the insurance policy it purchased obligated Westchester Fire to defend and indemnify it from the lawsuit instigated by Arst. The *Pipefitters* court found that the policy's pollution exclusion was only applicable to bodily injury and property damage. The *Pipefitters* decision rebuked the insurer's argument that the pollution exclusion was applicable to the personal injury endorsement, since the pollution exclusion expressly provided that coverage under only the property damage and bodily injury provisions was not valid if the damage was caused by pollution. The Seventh Circuit considered the rule of *ejusdem generis*, but concluded that under Missouri law wrongful entry, unlike eviction, did not require the intent to dispossess. Thus, the trespass and "impair[ment] of Arst's right to occupy its property" claims fell within the "other invasion" provision.

The Sixth Circuit recently addressed these same issues in *Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015 (6th Cir. 1995), but with slightly different facts. It was discovered that Harrow's manufacturing plant was the source of the contaminant trichloroethylene (TCE) found in the water supply for the city of Saranac, Michigan. The *Harrow* court concluded that the personal injury endorsement could not logically be read to provide coverage for damage caused by pollution since the policy contained a pollution exclusion. The court recognized that the pollution exclusion expressly mentioned only property damage and bodily injury, but the court reasoned that the pollution exclusion was applicable to the personal injury coverage because the policy read as a whole could not be interpreted any other way.

> The essence of the claim for which Harrow seeks defense and indemnification is an injury to property. The endorsement does not alter or amend the coverage of the

underlying policy except as it states by its terms. Simply because the personal injury endorsement adds coverage does not mean that the pollution exclusion does not apply to the entire policy.

*Harrow,* 64 F.3d at 1025.

The *Harrow* court criticizes the Seventh Circuit's holding in *Pipefitters.* The *Harrow* court stated:

The [*Pipefitters* ] court did not explain what was so disingenuous, let alone sanctionable, about claiming that a clause that clearly excluded coverage for property damage from pollution applied to an attempt to recast the pollution damage to property as a personal injury.

*Id.* 64 F.3d at 1024. Contrary to recasting pollution damage to property as "personal injury," in *Pipefitters,* the underlying complaints had allegations of damage to personal property interests. The *Harrow* appellate court did not discuss the claims made in the underlying complaint, but the district court found that no claims had been made which could be characterized as a personal injury.

Here, unlike the *Titan, Pipefitters* and *Hirschberg* cases, no showing has been made that Harrow Products is threatened with liability for interfering with property owners' or occupants' rights of private occupancy. No private occupants of property have filed claims in either action. Nor has the MDNR or Village of Saranac asserted claims as subrogees of, or in some other representative capacity for, occupants of property. The MDNR and Village of Saranac actions, asserting claims under the Michigan Water Resources Commission Act, the Michigan Environmental Protection Act, and CERCLA based on the "people's" interest in uncontaminated groundwater, cannot reasonably be characterized as premised upon interference with rights of private occupancy.

*Harrow Products, Inc. v. Liberty Mut. Ins. Co.,* 833 F.Supp. 1239, 1246 (W.D.Mich.1993), *aff'd,* 64 F.3d 1015 (6th Cir.1995). A distinction should be noted between injury to property as a result of pollution and injury to personal interests due to the injury to property. The *Harrow* appellate court recognized the distinction, but instead of concluding that the allegations in the complaint were only property damage and not within the definition of personal injury, as the *Harrow* district court had done, the appeals court took an extended interpretative leap and applied the pollution exclusion to the personal injury endorsement.

■ The pollution exclusion by its expressed terms, applies only to bodily injury and property damage.

This insurance does not apply: ...

(f) to **bodily injury or property damage** arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental....

No similar exclusion appears within the personal injury endorsement. Exclusions must be in clear and unmistakable language and are always strictly interpreted.

Exceptions to the general liability are to be strictly construed against the company, and any uncertainty in the meaning of the exclusion clause should be decided in favor of insured. A liability policy having a clear and unequivocal guaranty against accidental loss will not be limited or controlled by later doubtful exemptions.

*American Hardware Mutual Ins. Co. v. Union Gas Co.,* 238 Miss. 289, 118 So.2d 334, 335 (1960) [4]; *see also State Farm Mut. Auto*

4. The *Union Gas* court cites the following lengthy passage from American Jurisprudence:

The rule is well established that if conditions, exceptions and exemptions from, or limitations of, the liability of an insurer are not expressed plainly and without ambiguity, they will be construed strictly against the insurer, and liberally in favor of the insured, in order that the

purpose of insurance shall not be defeated. It has been deemed that an insurer should not be allowed, by the use of obscure phrases and exceptions, to defeat the very purpose for which the policy was procured. The reason for this rule is that the insurance company selected the phrase to be construed and should

*Ins. Co. v. Scitzs,* 394 So.2d 1371, 1373 (Miss. 1981). Applying the pollution exclusion to the personal injury endorsement is allowing the tail to wag the dog. The insurance policy was purchased to provide liability coverage. Accordingly, it seems inappropriate to construe the pollution exclusion, which does not refer to the personal injury endorsement, as applicable to personal injuries caused by pollution.

The *Harrow* court is not bothered by such technicalities. The overriding force behind the *Harrow* decision was the attempt to interpret the insurance policy as a whole. Quoting Michigan law, the appellate court stated:

> The intention of the parties must be deduced from the entire agreement, not from any part or parts of it, and, where a contract has several stipulations, the intention of the contracting parties is not expressed by any single clause or stipulations, but by every part and provision in it, which must all be considered together, and so construed as to be consistent with every other part.

*Harrow,* 64 F.3d at 1025 (*quoting Johnston v. Miller,* 326 Mich. 682, 40 N.W.2d 770, 771–72 (1950)) (*also cited DeBoer v. Geib,* 255 Mich. 542, 238 N.W. 226 (1931) ("A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all its provisions.")).

Of course, applying the exclusion to personal injuries caused by pollution negates or neutralizes the coverage specifically provided under the personal injury endorsement. An insurance contract which contains provisions for coverage as well as exclusions naturally creates inconsistencies of coverage. To extend the sphere of an exclusion beyond its specific wording denies to the contracting parties the option of sculpting the contract to fit the specific contours of coverage to which the parties agree. The personal injury endorsement has a separate insuring agreement, definitions, and exclusions. It stands alone and is not dependent upon or limited by coverage or exclusion provisions else-where in the policy. It is a fundamentally inappropriate construction of the insurance policy to apply the pollution exclusion to the personal injury endorsement.

Those courts which do take the leap of interpretation by categorically applying the pollution exclusion to the separate personal injury endorsement may mistakenly be interpreting other cases which have held that the injuries which the plaintiff is alleging to be personal injuries are in fact property damage and, thus, not capable of being brought as personal injuries. Such courts apply the pollution exclusion to the claims not because the claims are personal injury but because they actually are property damage. Since the allegations have been categorized as property damage and were caused by pollution, then they are precluded from coverage by the pollution exclusion. This approach means that the pollution exclusion will not preclude coverage over personal injuries which have been caused by the discharge of pollution and have been properly pled.

Although a California state court case, *Legarra v. Federated Mutual Ins. Co.,* 35 Cal. App.4th 1472, 42 Cal.Rptr.2d 101 (Ct.App.3d Dist.1995), clearly states the position of those courts which have concluded that the personal injury endorsement has no application when the damage sustained has been caused by the release of pollution. In *Legarra,* the plaintiffs had purchased at a foreclosure sale a parcel of land which had formerly been used as a petroleum bulk plant. Federated Mutual issued a liability policy on the property. The plaintiffs instigated a declaratory judgment action to determine Federated Mutual's duty to defend and indemnify them in connection with a demand by the California Regional Water Quality Control Board for costs associated with groundwater contamination on the property. The policy contained a pollution exclusion similar to the one in the case *sub judice* and a personal injury endorsement identical to the pertinent phrase before the court.

The *Legarra* court finds fault in those cases which do not apply the pollution exclu-

---

have specifically excluded the risk if there was any doubt.

*Id.* 118 So.2d at 335 (*quoting* 29 Am.Jur., Insurance, § 264).

sion to injuries alleged under the personal injury endorsement.

> While "wrongful entry or eviction or other invasion of the right to private occupancy" in the abstract might apply to pollution damage, read in the context of the entire policy it is unreasonable to expect such coverage here. The Board's claim against the Legarras relates to property damage caused by groundwater contamination. Coverage for such damage is clearly excluded under the pollution exclusion.... We must interpret the insurance contract to give effect to every part if possible. That can be done here by rejecting the expansive view of personal injury offered by the Legarras.... Our conclusion that personal injury does not cover pollution damage to real property is consistent with that of courts that have considered the policy as a whole. Cases that have found such coverage are not persuasive because they have interpreted the personal injury provision in a vacuum, ignoring the effects of the pollution exclusion on the insured's reasonable expectation of coverage.

*Id.* 35 Cal.App.4th at 1485–86, 42 Cal.Rptr.2d 101. This court does not agree with the *Legarra* court's reasoning. How is an insured's reasonable expectation of coverage under the personal injury endorsement curtailed or constricted by a pollution exclusion which specifically and expressly only has application to bodily injury and property damage? If the Legarras failed to allege injuries other than property damage, then on the face of the complaint the personal injury coverage has not been invoked, and it is not necessary to indulge in a forced construction of the dynamics of the pollution exclusion.[5] It is not a matter of construing the personal injury endorsement in isolation from the rest of the policy, although it certainly has all of the elements for a separate insurance contract, but is a matter of recognizing the factual distinction between allegations which fall within the personal injury endorsement and those which do not.

Some cases which apply the pollution exclusion to the personal injury endorsement do not acknowledge that the discharge of pollution can result in a personal injury. These courts seem to stand for the proposition that there is no distinction between injury to possessory interests and injury to the realty. Those courts which do not recognize the distinction flatly deny coverage for all injuries which have been caused by pollution. The advantage of concluding that pollution can only cause property damage is the simplicity of applying the exclusion. The fallacy of this position is that it fails to acknowledge that pollution is capable of inflicting a personal injury separate from property damage.

In *Titan Corp. v. Aetna Casualty & Surety Co.*, 22 Cal.App.4th 457, 27 Cal.Rptr.2d 476 (1994), the California appellate court stated:

> The policy here unambiguously declares it will not pay for either bodily injury or property damage when the cause of such injury or damage is pollution. Under the interpretation urged by *Titan* and adopted by the trial court, *that exclusion will never operate,* because the pollution exclusion's "property damage" provisions are relevant *only* to eliminate liability for third party property injury. However, under the trial court's interpretation, such injury would simply be relabeled as an "other invasion of the right of private occupancy," rendering the pollution exclusion a dead appendage to the policy.
>
> **We interpret the coverage afforded by the personal injury portion of the policy as being limited to damages other than the injury to realty which an occupier of land may suffer when his quiet enjoyment of occupancy is disturbed.**

*Id.* 27 Cal.Rptr.2d at 486 (*citing Waranch v. Gulf Ins. Co.*, 218 Cal.App.3d 356, 266 Cal. Rptr. 827 (1990) (emphasis added) (Wrongful entry or eviction or other invasion of the right of private occupancy only covers injuries personal to the occupant of real property)). The *Titan* court recognized the distinction, but because the complaint only alleged

---

**5.** The *Legarra* court justifies its position with extrinsic evidence.

Our conclusion that an insured could not have reasonably expected such coverage is sup-

ported by the fact the policy offered coverage for pollution clean-up as an optional coverage. *Id.,* 35 Cal.App.4th at 1486, 42 Cal.Rptr.2d 101.

property damage, the personal injury coverage had not been invoked. Damage sustained by property from the discharge of pollution will not have insurance coverage, but damage sustained by those rights incidental to the ownership of property, possessory interests, are personal and are not precluded by the pollution exclusion. Thus lies the distinction between damage to realty and injury to possessory interests.

This court is not allowing the property damage to be retooled as personal injuries. The underlying state court plaintiffs generally are not only seeking damages for the physical injury to their property (which is excluded under the pollution exclusion), but also for damage to the exercise of their personal rights which are an incident of the ownership of the realty. Although inextricably related, there is a difference. Since they are distinct, the first falls under property damage coverage and, under the circumstance, would be precluded by the pollution exclusion; the second falls under the personal injury endorsement qualifying as either "wrongful entry," "other invasion of the right of private occupancy," or "fright, mental anguish ... [and] creation of emotional disturbance."

The Fifth Circuit concluded in *Gregory v. Tennessee Gas Pipeline Co.*, 948 F.2d 203 (5th Cir.1991), that a personal injury endorsement did not provide coverage for injuries inflicted by a pollutant that had been discharged into a lake maintained by a municipality. In *Gregory*, personal injury was defined as:

> Wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies.

The Fifth Circuit accepted the district court's conclusion "that to extend Coverage B [personal injury] to all property damages, including damages which would be covered under Coverage A [property damage], would render the pollution exclusion meaningless." The state court plaintiffs made no allegations of trespass in association with the discharge of the pollution. Additionally, the state court

plaintiffs did not allege intentional conduct by the insured; rather, it was alleged only that the city "knew of the pollution in the lake and failed to either clean it up or warn plaintiffs of the contamination." *Id.* 948 F.2d at 209.

> [No authority] supports the City's assertion that pollution generated by a third party, Tennessee Gas, which passed into and through property owned or occupied by the City—the lake—and injured abutting property of the plaintiffs constitutes a *wrongful entry within the meaning of Coverage B.* The definition of personal injury bears this out. Each of the enumerated risks specifically assumed requires active, intentional conduct by the insured. When viewed in the context in which they appear, the words "wrongful entry into, ... premises that the person occupies" do not afford coverage for the offense alleged in any complaint.

*Gregory*, 948 F.2d at 209. This is a clear distinction from the complaints *sub judice.*

*Gregory* has been cited as standing for the proposition that plaintiffs cannot retool property damage as personal injury in order to avoid the pollution exclusion. *See Harrow Products, Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1022 (6th Cir.1995). These cases argue that the parties did not contract nor pay premiums to provide coverage for pollution related injuries.[6] Thus, skillful drafting of a complaint should not be allowed to undermine the parties' intent. *Gregory* actually holds that property damage excluded by the pollution exclusion under the property damage coverage cannot be retooled as property damage under the personal injury coverage. *Gregory* does not stand for the proposition that the discharge of pollution cannot cause damage which falls under the definition of "personal injury." The complaint which the *Gregory* court was reviewing only alleged property damage.

In *U.S. Fidelity & Guar. Co. v. B & B Oil Well Service Inc.*, 910 F.Supp. 1172, (S.D.Miss.1995) (Judge Tom Lee), twelve landowners filed separate lawsuits alleging

---

**6.** Some pollution exclusions, including the one in the instant case, do provide coverage for discharges of pollution which are sudden or accidental in nature. Such has not been alleged nor argued *sub judice.*

that their property had been contaminated with Naturally Occurring Radioactive Material (NORM) as a consequence of the location and operation of oil and gas wells on their property. U.S.F. & G. agreed to defend B & B under a reservation of rights and filed a declaratory judgment action in the Federal District Court for the Southern District of Mississippi. Some of the U.S.F. & G. policies contained a pollution exclusion applicable to "bodily injury" or "property damage" similar to the Aetna exclusion before this court. The district court concluded that B & B intentionally released the substance and therefore the "sudden and accidental" exception to the pollution exclusion did not apply.

More pertinent to this court's review, some of the U.S.F. & G. policies contained a personal injury provision identical to that found in the Aetna policies. The district court stated that the underlying lawsuits complained that:

> ... the NORM contamination of their properties constitutes "an ongoing nuisance that has trespassed on plaintiffs' property to the injury of the plaintiffs," and which has caused plaintiffs to be damaged "relative to [their] property values and rights."

*B & B Oil Well Service,* 910 F.Supp. at 1183. The court concluded that no insured would reasonably expect the personal injury coverage to include property damage which had been excluded under the comprehensive general liability by a pollution exclusion. "Given the context of Coverage B, we feel that the personal injury provision cannot reasonably be construed to cover property damage from pollution." *Id.* at 1186.

It is difficult to discern whether the *B & B Oil* court found that the state court lawsuits had only alleged property damage or whether the court concluded that the discharge of pollution was not capable of inflicting personal injuries. If the court's holding is the former, the allegations of the complaints in the underlying lawsuits distinguish *B & B Oil.* The state court plaintiffs involved in this action are not just alleging property damage from the release of the pollution. There are allegations that the release of dioxin trespassed and inflicted nuisance upon

those personal rights which are derivative of and incidental to the ownership of property. If the court's holding is the latter, this court must disagree. The release of pollutants can cause injuries which come within the definition of personal injury different from bodily injury or property damage.

### Same Nucleus of Facts

Several cases, all from Texas district courts, after applying a "same nucleus of facts" test, have found that the alleged property damage and bodily injury were excluded by the pollution exclusion. In *Northbrook Indem. v. Water Dist. Management Co.,* 892 F.Supp. 170 (S.D.Tex.1995), the defendant operated and maintained the waterworks and wastewater systems for a municipal utility district. Several residents sued the defendant alleging that "they have or will suffer bodily injury due to exposure to well water contaminated with toxic and hazardous substances, including benzene, that was discharged from the well. ..." *Northbrook,* 892 F.Supp. at 171. The insurance policy sold to the defendant contained a pollution exclusion which negated bodily injury and property damage coverage. The defendant argued that the underlying state court actions alleged various theories of liability, including negligence, which would not be excluded by the absolute pollution exclusion. The district court applied the "same nucleus of facts" test and concluded that the different theories of recovery did not change the nature of the precluded event which was the discharge of pollution. The state court defendant's allegations, no matter how phrased, were still bodily injury which was expressly excluded by the absolute pollution exclusion.

Separate from its discussion on the "same nucleus of facts" test, the court briefly discussed the personal injury endorsement, but concluded that "[n]o coverage exist[ed] under Coverage B for the wrongs asserted in the underlying complaints." *Id.* 892 F.Supp. at 176. Since the complaint only alleged bodily injury and property damage, the allegations did not invoke the personal injury endorsement. *See also Dorsett Brothers Concrete Supply, Inc. v. Northbrook Property and Cas. Ins. Co.,* No. 92–2546, Slip. op., 1995 WL

559379 (S.D.Tex. Sept. 10, 1993) (pollution exclusion unambiguous and if injuries are the result of contaminated products, no coverage or duty to defend; no discussion of personal injury coverage); *Bituminous Cas. Corp. v. Kenworthy Oil Co.,* 912 F.Supp. 238 (W.D.Tex.1992) ("When these factual allegations are distilled to their essence, it is clear that plaintiff seeks recovery of damages for past and future pollution of the underlying aquifer."; followed *Gregory* regarding personal injury claims). This court makes note of the use of the "same nucleus of facts" test only because of potential confusion in applying it to exclude personal injury coverage. The courts which have used the test have only applied it when the plaintiff is attempting to invoke different theories of liability for bodily injury and property damage. None of the cases have applied the test to preclude the personal injury coverage for pollution related damages.

### Trespass in Mississippi

Causes of action which seek to preserve the rights incidental to ownership of property (possessory interests) are recognized in the state of Mississippi. For example, trespass, as commonly acknowledged, rarely entails more than minimum physical damage to the property, but more generally is a mechanism to revenge the offense to the possessory interests in the property. In *City of Jackson, Miss. v. Filtrol Corp.,* 624 F.2d 1384 (5th Cir.1980), the Fifth Circuit recognized that "Mississippi allows a plaintiff damaged by a physical invasion to its land to recover upon a simple showing that the defendant was responsible for the physical invasion." *Id.* 624 F.2d at 1389; *see also Berry v. Armstrong Rubber Co.,* 989 F.2d 822, 829 (5th Cir.1993) (must present evidence of invasion to support common law nuisance and trespass). The plaintiff sued Filtrol Corporation on the theories of nuisance, trespass, and strict liability for extraordinary costs it incurred when it laid a sewer line within an easement across the defendant's land. The easement had became acidified by a leaking holding pond maintained by the defendant. "The City produced sufficient evidence from which a jury could reasonably infer that it suffered damages because Filtrol's acid phys-

ically invaded the right-of-way." *Id.* at 1390. Under Mississippi law, one may incur liability for a negligent, or unintentional trespass, and nuisance does not require intentional conduct. The city had made a case for trespass and only had an easement interest in the property.

In *Keppner v. Gulf Shores, Inc.,* 462 So.2d 719, 725 (Miss.1985), a joint venture was established to build a sewage lift station for the mutual benefit of several businesses. The lift station was built on the property of one of the joint venturers who later filed bankruptcy. The property and interest in the joint venture were purchased by the appellants. The appellants then began using the lift station beyond the capacity of the bankrupt entity. The other joint venturers sought to enjoin the appellants' conduct. The Mississippi Supreme Court affirmed the chancellor's decision which held that the property rights of the joint venturers had been trespassed upon by the appellant even though he was the actual owner of the realty where the lift station had been built. The court stated:

> A trespass may be an offense to another's person, health, reputation, or property. This situation is analogous to the owner of a servient estate interfering with the enjoyment of the easement rights of another, even though the easement is nonpossessory.

*Keppner,* 462 So.2d at 725. It is obvious that a claim of trespass is a means to recover for more than just property damage, and that proof of intent to dispossess is not required to maintain a trespass cause of action in Mississippi.

In *Shutes v. Platte Chemical Co.,* 564 So.2d 1382 (Miss.1990), the complaint alleged that the defendant was guilty of trespass by allowing chemicals from its plant to come upon the property of the plaintiffs and charged that the plant constituted a nuisance. The plaintiffs' property was adjacent to the defendant's plant which produced several different herbicides. The evidence indicated that foliage on the plaintiffs' property showed signs of damage, and that there was found on the plaintiffs' property traces of the

type of herbicides produced by the defendant. The Mississippi Supreme Court reversed the trial court's directed verdict for the defendant. The Supreme Court found there was sufficient evidence from which "a jury could have reached a reasonable conclusion as to whether or not the property of the plaintiffs was indeed invaded by chemicals having their origin at the plant of the defendant." *Shutes,* 564 So.2d at 1385. In the case *sub judice,* most of the state court plaintiffs have pled both nuisance and trespass claims. Under Mississippi case law, such claims provide a mechanism to recover damages for injury not only to the physical realty, but also, to those rights incidental to the ownership of the property.

### Personal Injury Endorsement

■ The personal injury provision covers various "offenses" committed by the insured against a person or organization. The personal injury endorsement extends liability coverage to the specific torts enumerated. The list includes torts of recognizable types involving damages which can be lumped under the descriptive term "personal injury." "[P]ersonal injury coverage is not determined by the nature of the damages sought in the action against the insured, but by the nature of the claims made against the insured in the action." *Martin Marietta Corp. v. Insurance Company of North America,* 40 Cal.App.4th 1113, 47 Cal.Rptr.2d 670 (1995). Personal injury liability is a theory-based insurance coverage. It defines its coverage in terms of offenses, or theories of liability, not in terms of the injury sustained by the plaintiff. Comprehensive general liability insurance is the opposite; it is an injury-based insurance which defines its coverage in terms of certain injuries sustained (bodily injury and property damage) and not in terms of the theory of liability the plaintiff alleges.

■ GNN contends that trespass and nuisance are analogous to "wrongful entry" or the general phrase "other invasion of the right of private occupancy." Aetna argues that trespass and nuisance are not offenses which come under the personal injury definition. "Personal injury" is defined as:

injury arising out of one or more of the following offenses committed during the policy period:

    (1) false arrest, detention, imprisonment, or malicious prosecution;

    (2) **wrongful entry or eviction or other invasion of the right of private occupancy;**

    (3) a publication or utterance

        (a) of a libel or slander or other defamatory or disparaging material, or

        (b) in violation of an individual's right to privacy....

This definition was expanded by an endorsement amendment to include:

    4.  **Fright, Mental Anguish,** Plagiarism

    5.  **Creation of Emotion Disturbance**

    6.  Discrimination....

All of the listed personal injuries are recognized torts, except for "wrongful entry" and "other invasion of the right of private occupancy." Every court which has wrestled with this provision has attempted to understand what is meant by the phrases. Aetna argues that the "or other ..." phrase cannot extend coverage beyond the scope of the two specific enumerations—"wrongful entry" or "eviction."

[T]he specific phrase 'other invasion of the right of private occupancy' ... must be interpreted in light of the preceding words 'wrongful entry or eviction,' *Martin v. Brunzelle,* 699 F.Supp. 167, 170 (N.D.Ill. 1988). This must mean and involve some affront to an interest in possession of real property.

*Straits Steel and Wire Co. v. Michigan Millers Mut. Ins. Co.,* No. 91–72991–DK (Mich. Cir.1992).

■ Aetna urges the court to use the principle of *ejusdem generis* in order to interpret the phrase "or other invasion of the right of private occupancy." *Ejusdem generis* is a method of construction which provides:

Of the same kind, class, or nature. In the construction of laws, wills, and other instruments, the "ejusdem generis rule" is, that where general words follow an enumeration of persons or things, by words of

a particular and specific meaning, such general words are to be held as applying only to person or things of the same general kind or class as those specifically mentioned.

Black's Law Dictionary (5th Ed.1983). The rule restricts the broadness of the general phrase to the same category as the previous specific enumerations. Most court which have used the *ejusdem generis* rule to interpret the "or other ..." phrase *sub judice* have restricted it to have application only within the realm of landlord/tenant remedies. The courts which have applied the doctrine of *ejusdem generis* to the phrase "other invasion of the right to private occupancy" conclude that the phrase must be at least analogous to eviction and wrongful entry which both require dispossessing. Thus, the argument goes, the phrase cannot entail simple trespass.

GNN points out that no Mississippi case has used the doctrine of *ejusdem generis* to interpret an insurance contract. The court has not found reference to the doctrine as a specific means of insurance policy construction. GNN argues, with some logical force, that the rule of *ejusdem generis* results in a constricted reading of the phrase, but that insurance policy construction methods are designed to err on the side of broadness of interpretation. GNN asserts that application of the rule to the provision improperly prevents the general phrase from having independent meaning and full effect. Ironically, this is the same "logic" used to conclude that the personal injury endorsement does not provide coverage for pollution related damage since it would negate the effect of the pollution exclusion.

Wrongful entry is argued to be an ancient common law remedy that is similar to modern day unlawful entry and detainer.[7] The court has found "wrongful entry" only in one Mississippi case, and there as an adjective (wrongful) modifying the manner of entry. *See Jackson Municipal Airport Authority v. Wright,* 232 So.2d 709, 713 (Miss. 1970) (*quoting* 27 Am.Jur.2d Eminent Domain § 478 (1966)) ("... valuation should be made at the time of the original wrongful entry ..."). The only time the words "wrongful entry" have appeared in Fifth Circuit case law has been when the court quotes this insurance policy provision or uses it as a descriptive phrase. *See Rawls v. Conde Nast Publications, Inc.,* 446 F.2d 313, 315 (5th Cir.1971) ("... complaint alleged that the defendant ... invaded the plaintiff's privacy by means of a wrongful entry and unauthorized physical intrusion ..."); *Lopez–Reyes v. Immigration and Naturalization Ser.,* 694 F.2d 332, 333 (5th Cir.1982) ("It is not disputed that Lopez is subject to deportation ... because of his wrongful entry."). In Mississippi, wrongful entry is just another way of saying trespass. Trespass in Mississippi is extremely broad, ranging from dispossessing to much more esoteric invasions.[8]

Additionally, the court believes that the key to understanding "wrongful entry" is the middle offense, "eviction." Eviction is a legal remedy for a landlord to regain control of property which is being wrongfully pos-

---

**7.** Most of the cases which have concluded that the "wrongful entry or eviction or other invasion of the right of private occupancy" provision to be limited by the rule of *ejusdem generis* consider "wrongful entry" to be án enumeration of a specific tort. *See generally* William J. Bowman & Patrick F. Hofer, *The Fallacy of Personal Injury Liability Insurance Coverage for Environmental Claims,* 12 Va.Envtl.L.J. 393 (Spring 1993). The specific tort is argued to be the "writ of entry." Writ of entry is defined as: "A real action to recover the possession of land where the tenant (or owner) has been disseised or otherwise wrongfully dispossessed." Black's Law Dictionary (5th ed. 1983).

**8.** In *Continental Casualty Co. v. Garrett,* 173 Miss. 676, 161 So. 753 (1935), Garrett was accused by an agent of Continental of faking illness in order to receive disability insurance payments. Garrett stated that the agent called him a "liar," and that due to his illness he was unable to defend himself. The Mississippi Supreme Court affirmed the jury award of $250.00, and stated:

> ... the home is a place where the occupant and his family shall be entitled, not as a matter of sentiment, or of morals, or of good manners, but of positive law, to the right of quiet and peaceable enjoyment, free from hostile intrusions, whatever the character of the offensive intrusions may be, which includes, as its mere statement will prove, the right to be free from insults within the precincts of the home; and that a violation of that right shall be deemed an actionable tort.

*Id.,* 161 So. at 755.

sessed. "Eviction" is not an offense. It makes no sense for an insured to have coverage for "eviction." A complaint which alleges "eviction" is not alleging a cause of action, but a complaint which alleges "wrongful eviction" or "improper eviction" does. Obviously, "wrongful eviction" is the offense covered by the personal injury endorsement.[9] This means that "wrongful" before entry has to be an adjective modifying both entry and eviction. "Wrongful entry" as it appears in the provision cannot be the common law "writ of entry" or its modern day equivalent, "unlawful entry and detainer," but is a general descriptive term which would include trespass. By the same token, if wrongful entry was a specific enumeration of an offense, it would appear as "wrongful wrongful entry." It does not, which indicates that it is a general phrase that reasonably includes trespass.

GNN argues that the *Ferguson* case supports its assertion that the nuisance claims come within the definition of personal injury. In *Ferguson,* the Mississippi Supreme Court recited the definition of private nuisance. " 'A private nuisance is a nontrespassory invasion of another's interest in the use and enjoyment of his property.' " *Ferguson,* 662 So.2d at 662 (*citing Bowen v. Flaherty,* 601 So.2d 860, 862 (Miss.1992)). GNN argues that since the definition of nuisance closely resembles ". . . or other invasion of the right of private occupancy," then the complaint alleges an offense which falls within the coverage provided by the personal injury endorsement.

The phrase "or other invasion of the right of private occupancy" is not intended to be an enumeration of a specific tort. It is designed to expand coverage to torts other than wrongful entry or wrongful eviction, but within the same lineage of causes of action. The problem is that "wrongful entry" as a particular cause of action is not recognized in the state of Mississippi. Therefore, it is impossible to determine the lineage of the general phrase. Since wrongful entry is analogous to trespass, and trespass in Mississippi does not require dispossession, then the general phrase ("or other invasion . . .") should not be interpreted to require dispossession. A nuisance claim fits nicely within the meaning of the general phrase, and accordingly, a claim of nuisance is covered by the personal injury endorsement.

Additionally, since wrongful entry is not a specific enumeration, the rule of *ejusdem generis* is not applicable, or, if applied, would not result in the phrase "or other invasion of the right of private occupancy" as requiring dispossessing. This general phrase clearly states that it covers offenses which are invasions of the right of private occupancy. The right of private occupancy is the possessory interest which is incidental to the ownership of the realty—the same right which the underlying state court plaintiffs have alleged to have suffered trespass and nuisance. The personal injury endorsement provides coverage for the claims of trespass and nuisance alleged in the underlying state court lawsuits.

### Creation of Emotional Disturbance

■ The personal injury endorsement provides coverage for "offenses committed during the policy period." The amendment to the personal injury endorsement expanded coverage to include "fright, mental anguish,

---

9. In *Titan Corp. v. Aetna Casualty & Surety Co.,* 22 Cal.App. 4th 457, 27 Cal.Rptr.2d 476 (1994), the court inadvertently reveals the mistake of assuming "wrongful entry" to be an enumeration of a particular tort instead of a general phrase (i.e. wrongfully describing both entry and eviction).

In *Waranch v. Gulf Insurance Co.,* (1990) 218 Cal.App.3d 356, 266 Cal.Rptr. 827, the court interpreted a similar 'personal injury' clause as a whole and concluded, under principles of *ejusdem generis,* the policy applied to **wrongful evictions,** entries or other similar violations of quiet occupancy. (*Id.* at pp. 359–361, 266 Cal.Rptr. 827.)

*Id.* (emphasis added). In the *Titan* and *Waranch* cases, the personal injury phrase was identical to the one before this court, but those courts concluded that "wrongful entry" and "eviction" were specific torts. Each court applied *ejusdem generis* and found the general phrase required dispossessing.

Aetna states on page nineteen of its memorandum in opposition to plaintiff's motion for partial summary judgment: "The offenses of 'wrongful entry, **wrongful eviction** or other invasion of the right of private occupancy' were not committed by GNN in damaging the underlying plaintiffs' property." (Emphasis added.)

... [and] creation of emotional distress." Aetna characterizes the emotional distress claims as fear of cancer claims. Aetna argues that such fear could not have occurred until it had become public knowledge that dioxin had been discharged into the Leaf River. The earliest that it could have become known that dioxin was being discharged was in 1989, three years after the Aetna policies expired. Aetna argues that it is impossible to be emotionally disturbed without knowledge of the discharge. Aetna asserts that emotional distress claims are viable once they have manifested which could not have been when the dioxin was released. Since the release of the dioxin did not become public knowledge until three years after the last Aetna policy had expired, the emotional distress claims could not be covered. GNN asserts that the offense is "creation of emotional disturbance." GNN argues that the emotional disturbance claim was created when the dioxin was released which was while the Aetna policies were in effect.

In Mississippi, emotional distress requires proof that the defendant's conduct evokes outrage or revulsion. "In such instances, it is the nature of the act itself—as opposed to the seriousness of the consequences—which gives impetus to legal redress." *Ferguson,* 662 So.2d at 658 (*citing Sears, Roebuck & Co. v. Devers,* 405 So.2d 898, 900 (Miss.1981). GNN asserts that since the causative act is what provides the "impetus to legal redress," then the emotional distress claim was created when the dioxin was discharged. Aetna argues that the causative act is only relative as to the accessing of damages.

It is undisputed that GNN discharged dioxin into the Leaf River when the Aetna policies were in effect. It is undisputed that the Aetna policies had expired when it was announced that GNN had been discharging the dioxin. The question regarding the underlying emotional distress claims is whether the offenses of "fright, mental anguish ... [and] creation of emotional disturbance" were committed when the dioxin was discharged or when it was announced that dioxin had been discharged. If the offense was commit-

ted when the dioxin was discharged, Aetna has an obligation to defend and indemnify. If the offense was committed when it was announced that dioxin had been discharged, beyond the policy period, Aetna would have no obligations.

Both of the parties' arguments are credible. The court has been unable to find any authority to assist in determining the intentions of the drafters regarding this issue. In regard to when the coverage for the listed offenses attaches, the phrase is ambiguous and must be construed in GNN's favor. Additionally, to restrict coverage of "fright, mental anguish ... [and] creation of emotional disturbance" to the policy in effect at the time that it became known that a potential health hazard had been occurring would encourage delaying the announcement. Such a construction of the provision would be contrary to public policy. Thus, the Aetna policies provide coverage for the allegations of emotional distress made in the underlying state court lawsuits.

Alternatively, there have been testimony and affidavits submitted which indicate that some of the state court plaintiffs noticed that the river became discolored and had a foul smell in 1985, when the Aetna policies were in effect. Some of the state court plaintiffs allege that the foul odor and discoloration caused them to suffer emotional distress. This would raise a genuine issue of fact whether these observations created emotional disturbance. Accordingly, the court finds that the allegations of emotional distress in the state court lawsuits are offenses which are covered by the personal injury endorsement in the Aetna policies, and obligates Aetna to defend and indemnify GNN for those claims.

### *Violation of Penal Statute*

Aetna alleges that the policies do not provide coverage because GNN violated a penal statute by discharging dioxin into the Leaf River without a permit. At the time of coverage under the Aetna policies, dioxin was not a regulated discharge. Failure to have had a permit for dioxin discharge is understandable. The court would be overstepping its authority in this declaratory judgment

action if it found GNN's action was a violation of a penal statute.

### Reinsurance Policies

The reinsurer or excessive carriers have filed motions seeking to be dismissed from this action. In essence, these insurers argue that since the principle insurers have not been exhausted of the policy limits, there is no justiciable cause of action against them. In light of this court's ruling regarding Aetna, at this stage the court is not prepared to address these motions. Considering the inordinate long delay in rendering this opinion, it is appropriate that the parties file with the court an agreed case status report so the court may consider those matters which the parties agree are still pending.

An order in accordance with this memorandum opinion shall be issued concurrently.

### DECLARATORY JUDGMENT AND ORDER

In accordance with a memorandum opinion issued concurrently, IT IS DECLARED, ADJUDGED, AND ORDERED:

That the plaintiffs' motion for partial summary judgment as to Aetna Casualty and Surety Company is granted; the court declares that Aetna has an obligation to defend and indemnify the plaintiffs for the allegations of trespass, nuisance, and emotional distress which fall within the personal injury endorsement of the Aetna insurance policies;

That Aetna's motion for summary judgment is denied;

That the parties are directed to file within thirty (30) days of the date of this order an agreed case status report.

SO ORDERED.